IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SOUTHERN ELECTRICAL RETIREMENT FUND | ) ) ) |
| v. | ) ) ) Case No. 3:18-cv-0585 |
| CHRISTINA GRUEL[1] and CAMRYN ELIZABENTH LAWHORNE | ) ) ) |

**To: Honorable Eli J. Richardson, United States District Judge**

## REPORT AND RECOMMENDATION

Pending are various dispositive motions, all of which seek a determination by declaratory judgment as to the proper beneficiary of the pre-retirement death benefits of Donald Lawhorne, Jr. The cross motions were referred to the undersigned Magistrate Judge for report and recommendation. *See* Order at Docket No. 32. For the reasons stated below, the undersigned respectfully recommends that the motion for judgment on the pleadings of Christiana Gruel (Docket No. 15) be DENIED; the motion of Southern Electrical Retirement Fund (the "Fund") for judgment on the record (Docket No. 18) be GRANTED; and, the motion of Camryn Elizabeth Lawhorne for judgment on the administrative record and/or on the pleadings (Docket No. 24) be GRANTED. Further recommendation is made that judgment be entered declaring the pre-retirement death benefits of decedent Donald Lawhorne, Jr. payable to Camryn Elizabeth Lawhorne and directing payment.

---

[1] There is some discrepancy in references to Defendant Gruel's first name. The complaint and the designation of beneficiary form and benefits claim form discussed below use the name Christina. Ms. Gruel refers to herself in filings in this case as Christiana.

# I. Background

### a. Proposed Findings of Fact[2]

This is an interpleader action brought by the plaintiff, Southern Electrical Retirement Fund (the "Fund"), under Section 1332(a)(3) of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. ("ERISA"), for a determination of which defendant, Christiana Gruel or Camyrn Elizabeth Lawhorne, is entitled to pre-retirement death benefits owing because of the death of plan participant, Donald Lawhorne, Jr. The Fund also seeks a declaratory judgment under Rule 57.

The facts are largely undisputed.[3] Donald Lawhorne, Jr. was a participant in the Southern Electrical Retirement Fund. (Docket No. 1 ¶ 6.) The governing documents are an Amended and Restated Agreement and Declaration of Trust Creating Southern Electrical Retirement Fund (AR at 1-47) and an amended and restated Plan of Benefits (effective January 1, 2015) (AR at 48-96).

Section 4.6 of the Plan directs:

> In the event of the death of an Employee who has not yet commenced receipt of a Normal, Early or Disability Retirement benefit, his surviving spouse, if any, shall be eligible to receive a "Pre-Retirement Death" benefit. In the event the Employee is not survived by a spouse, his beneficiary, as designated in accordance with Section 6.2 hereof, shall be eligible to receive such benefit. Such benefit shall become payable immediately upon the death of the Employee, but contingent upon receipt of written application therefor as prescribed by the Trustees.

---

[2] See discussion in Parts II and III below regarding application of review standards to these proposed findings of fact.

[3] The facts are gleaned from the Complaint (Docket No. 1) and the administrative record (referred to as "AR"), consisting of 114 pages filed by Plaintiff on September 4, 2018 and appended to Docket No. 20.

AR at 65. Section 6.2 of the Plan, which governs designation of beneficiaries, provides (in pertinent part) as follows:

> Each Employee or former Employee may designate a primary beneficiary or beneficiaries and a contingent beneficiary or beneficiaries to receive any benefit that may become payable under this Plan by reason of the Employee's death, but only when such payment is not otherwise payable to the Participant's surviving spouse in accordance with the provisions of Sections 5.1 and 5.2 hereof. Such designation shall be made upon forms furnished by the Trustees, and may at any time and from time to time be changed or revoked without notice to the beneficiary or beneficiaries and shall not be effective unless and until filed with the Trustees. If any Employee or former Employee shall fail to designate a beneficiary or beneficiaries, or if all those so designated predecease him, then the Employee shall be deemed to have designated the following as his beneficiaries and contingent beneficiaries with priority in the order named: (i) his or her widow or widower, as the case may be; (ii) his children and children of deceased children, per stirpes; (iii) his parents; (iv) his brothers and sisters and nieces and nephews who are children of deceased brothers and sisters, per stirpes; and (v) his estate.

AR at 82.

In February of 2015, Lawhorne executed a Designation of Beneficiary Form, which listed as the primary beneficiary "Christy Bender-Christina [sic]" with a relationship description of "Girlfriend" and a designated contingent beneficiary of "Camryn Lawhorne" with a relationship description of "Daughter". (AR at 97.) No change in beneficiary designation was made by Lawhorne prior to his death on January 10, 2018.

According to the Indiana death certificate, Lawhorne died on that date from a sudden traumatic brain injury caused by a self-inflicted gunshot. (AR 98.) At the time of his death, Lawhorne was at his then "girlfriend's residence." (*Id*.) There is no dispute that: (i) the residence where Lawhorne died was not the residence of Christiana Gruel; (ii) at the time of his death,

3

Lawhorne and Ms. Gruel were no longer in a romantic relationship; and, (iii) at the time of Lawhorne's death, Ms. Gruel was married to someone else.

Following Lawhorne's death, Ms. Gruel made a claim for death benefits under his pension plan. (AR 99.) On the claim form, Ms. Gruel refers to herself as "Christina M. Gruel" and describes her relationship to Lawhorne as "Ex-Girlfriend." (*Id*.) Lawhorne's family contested payment of the benefits to Ms. Gruel. (AR 100.) By correspondence dated April 4, 2018, the plan administrator notified Ms. Gruel on behalf of the Fund that her application for benefits was denied on the following basis:

> A beneficiary designation signed in February 2015 by participant Lawhorn[e] identified the beneficiary as "Christy Bender-Christina Girlfriend". Participant Lawhorn[e] died from a self-infl[i]cted gunshot wound on 1/10/18 at his "Girlfriend's Residence". This is from the death certificate.
>
> It is evidence, "Christina Girlfriend" is not the same girlfriend at whose residence participant Lawhorn[e] died, as "Christy Bender-Christina Girlfriend" and participant Lawhorn[e] parted ways several years ago. You married someone else in June 2017 and are now known by your married name, Christina Gruel. It is in this name that you applied for the benefit as "Ex-Girlfriend["].
>
> The beneficiary designation card signed by Lawhorn[e] did not suggest the beneficiary was to be an ex-girlfriend. We have determined administratively that Lawhorn[e's] intended beneficiary was "Christina Girlfriend," a status which changed when you and participant Lawhorn[e] parted ways and, more particularly, when you married someone else. A review of circumstances existing at the time the designation of beneficiary was signed in February 2015, and the words used are given their ordinary meaning. Simply stated, this means the intention of participant Lawhorn[e] was to designate you—his girlfriend at the time in February 2015—as beneficiary, but with an awareness that if you[r] status as girlfriend changed, you would not be the beneficiary.
>
> The words "Christina Girlfriend" are not descriptive of a person, but the status of a person. The status is a contingency which [c]an change with circumstances. For example, here the status did change when you married someone else. The term girlfriend is not an unusual word to use in describing the status of a person, and it is not

4

> an inept word. The meaning is clear and refers to a condition or circumstance that can be altered. The term suggests participa[nt] Lawhorn[e] intended you to be the beneficiary so long as you were his girlfriend, but not after that status changed.
>
> Here, you—as Christina Gruel—lost your status as "girlfriend" at the latest, when you married. The application for the death benefit describing your relationship to participant Lawhorn[e] as "Ex-Girlfriend" is consistent with this changed status. As a result, your application is denied.

AR 101-102. Ms. Gruel timely elected to appeal the plan administrator's determination. (AR 103-104.) The Fund's Investment Review Committee of the Board of Trustees (the "IRC") considered the appeal in a June 1, 2018 meeting and took the following action:

> After careful consideration of the letters, emails, and a thorough discussion of the situation, the committee discussion of the situation, the committee determined to affirm the construction and interpretation of the plan, and any facts relevant to construction and interpretation of the plan as had been made by the administrative staff as when the administrative staff initially denied the person's claim. However, the committee determined not to grant or deny the person's appeal, but rather, instructed that a declaratory action be filed to obtain a judicial determination about whether the person making the appeal or the participant's daughter was entitled to the death benefit.

AR 113-114.

### b. Procedural History

The Fund commenced the instant action, which seeks relief under Section 1332(a)(3), as well as under Rule 22 and Rule 57. Ms. Gruel filed a motion for judgment on the pleadings and an accompanying memorandum of law (Docket Nos. 18-19), in which she argues that the Fund's plan administrator is required to distribute the benefit proceeds to her as the designated beneficiary. Ms. Gruel also argues, in response to the motion for judgment on the record filed by the Fund (Docket Nos. 18-20), that the Fund's determination that she is not entitled to benefits is arbitrary and capricious because it is contrary to the plan documents. *See* Docket Nos. 28-29. She further

asserts that the Fund's determination should not be considered in this interpleader action. *See* Docket No. 29 at 2-4.

In its motion for judgment on the record, the Fund opposes Ms. Gruel's requested relief. *See* Docket Nos. 18-20. The Fund contends that the decision of the IRC "was the result of a deliberate, principled reasoning process, and is supported by material evidence." Docket No. 19 at 7. As a result, the Fund maintains that it acted properly and within its discretionary authority in affirming the administrative staff's determination that Ms. Gruel does not qualify for the death benefits. *See also* Docket No. 30 (Fund's reply reiterating propriety of determination).

Ms. Lawhorne also opposes Ms. Gruel's request and seeks judgment on the administrative record in her favor. *See* Docket Nos. 23-24 and 31. Ms. Lawhorne argues that the Fund's administrative staff and the full IRC acted properly and within their discretion in determining that Ms. Gruel is ineligible to receive the death benefits, which means the benefits are payable to Ms. Lawhorne as the contingent or secondary beneficiary. Ms. Lawhorne further relies on the reasoning of the Fund's administrative staff that because Ms. Gruel was undisputedly not Donald Lawhorne's "girlfriend" at the time of his death, under the plain language of the beneficiary designation form she is not eligible to recover benefits. Docket No. 31 at 2-5.

## II. Standard of Review

Although the parties have brought a variety of motions, ultimately, the Sixth Circuit's decision in *Wilkins v. Baptist Healthcare System*, following Supreme Court precedent, dictates this Court's standard of review in ERISA matters. 150 F.3d 609 (6th Cir. 1998). Under *Wilkins*, this Court has two possible standards of review. If the trustees of the Fund do not have discretion to determine eligibility for benefits or to construe the terms of the plan in question, the Court must

undertake a *de novo* review of the administrator's decision. *Id*. at 613. If, on the other hand, the plan vests discretion with the Fund administrator, the Court may disturb the administrator's decision only if the Court finds the basis of the decision to be arbitrary and capricious. *Id*. (citing *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989)).[4]

### III. Discussion

Before further explanation of the reasons for the recommended outcome, a discussion of the procedural posture of this action is appropriate. This is an interpleader action under Rule 22 of the Federal Rules of Civil Procedure. The Sixth Circuit has commented on the progression of an action under Rule 22 as follows:

> An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent use of interpleader. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial.

*United States v. High Techn. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (internal citations omitted). In determining the propriety of an interpleader action, a court must ascertain whether the stakeholder has a legitimate fear of multiple liability seeking a single stake. *Id.* at 642. Interpleader is also appropriate where the claims against the stake are adverse to each other. *See* 4 James Wm. Moore, Moore's Federal Practice § 22.03[1][d] (3d ed. 2016). The advantages of an interpleader

---

[4] As discussed in more detail below, that this case was brought as an interpleader action under Rule 22 does not deprive the Court of consideration of the administrative record. *See* Fed. R. Civ. P. 22(a)(1)(B) (interpleader is proper even if "the plaintiff denies liability in whole or in part to any or all of the claimants"). Nor does it change the standard of review.

7

action are tantamount to a declaratory judgment action as both actions enable a "defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience." *Bell & Beckwith v. United States, I.R.S.*, 766 F.2d 910, 914 (6th Cir. 1985) (internal quotation marks and citation omitted).

Here, the Court finds that the Fund has properly utilized both Rule 22 and Rule 57 in seeking a declaratory judgment as to the proper beneficiary of the death benefits at issue—the stake—given the competing and adverse claims of Ms. Gruel and Ms. Lawhorne. Subject matter jurisdiction is supplied by ERISA. Against this backdrop, the Court considers the relief requested by the parties.

### a. Motions of the Fund and Camryn Lawhorne for judgment on the administrative record

The Fund and Ms. Lawhorne request judgment in favor of Ms. Lawhorn based on the administrative record. "As to the merits of [an ERISA] claim, the court should conduct a de novo or arbitrary and capricious review based solely upon the administrative record." *Marchetti v. Sun Life Assur. Co. of Canada*, 30 F.Supp.2d 1001, 1004 (M.D. Tenn. 1998) (internal quotation marks omitted).[5] If, under the plan documents, the Fund's plan administrator is given discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the standard of

---

[5] Whether or not the Court's review for purposes of this action brought under Section 1132(a)(3) is limited to the administrative record is a question that does not require an answer at this time because the administrative record provides adequate support to grant the relief requested by the Fund and by Ms. Lawhorne. *See e.g. Milby v. Liberty Life Assurance Company of Boston*, No. 3:13-CV-487-CRS, 2016 WL 4599919 (W.D. Ky. Sept. 2, 2016) (discussing differences between Section 1132(a)(1) and Section 1132(a)(3) cases). A convincing argument could be made that, because this action is essentially a dispute over a denial of benefits, the Court may not consider information outside the administrative record. *Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)). Again, however, the Court need not draw that line because the administrative record supplies enough information to decide the issues.

review is arbitrary and capricious. *Wilkins*,150 F.3d at 613. "The test … is discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan, not both." *Marchetti*, 30 F.Supp.2d at 1007 (citing *Firestone*, 489 U.S. at 115) (emphasis in original).

The Court finds that the plan at issue here grants discretionary authority to the plan administrators to determine eligibility for benefits and construction of the plan. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th 1998)(en banc) (plan must contain a *clear* grant of discretion to the administrator to determine benefits or interpret the plan) (quoting *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1373 (6th Cir.1994)(emphasis in original)). The Fund's Trust Agreement at Section 5.21 provides, *inter alia*, that "the Trustees shall have full and exclusive discretion and authority to determine all questions of coverage and eligibility [and] … full power and complete discretion to construe the provisions of this Agreement and the Plan, the terms used in those documents or instruments, and any rules, regulations, procedures, and bylaws promulgated or issued under this Agreement." (AR at 33.) Section 4.7 of the Plan similarly provides that "[t]he Trustees shall have sole discretionary authority to determine eligibility for benefits under the Plan." (AR at 65.) Section 5.7(c)(5)(d) of the Trust Agreement provides that duties may be delegated to the IRC by the Trustees. (AR 28.)[6] The language of the Plan is sufficiently clear to grant discretionary authority to the plan administrators (including the IRC) to construe the terms of the plan and to assess claims, including for eligibility.

The Court is unpersuaded by Ms. Gruel's arguments that the IRC's determination is not reviewable at all in this interpleader action. Essentially, Ms. Gruel contends that the Fund's

---

[6] The declaration of Angela Nelson, attesting to the administrative record, states that the IRC's review upon Ms. Gruel's appeal of the administrative staff's construction of the plan and facts is within the scope of delegated duties. (Docket No. 20 at 3.) *See also* IRC minutes of appeal at AR 113-114.

9

decision to bring this interpleader action renders any prior administrative decision about eligibility "null and void." Docket No. 29 at 2. The Court disagrees. The plain language of Rule 22 allows for interpleader even though "the plaintiff denies liability in whole or in part to any or all of the claimants." Fed. R. Civ. P. 22(a)(1)(B). That is precisely the circumstance here.

Moreover, the unique standards of review in ERISA cases further dictate against Ms. Gruel's position. The relief sought by Ms. Gruel via a motion for judgment on the pleadings is essentially summary judgment based on the confines of the information found in the pleadings. Both a motion under Rule 12(c) and one under Rule 56 require a determination that there are no material issues of fact.[7] However, the Sixth Circuit "has ruled that summary judgment procedures are inapposite to ERISA actions to recover benefits, and, thus, should not be utilized in their disposition." *Marchetti*, 30 F.Supp.2d at 1004 (citing *Wilkins*, 150 F.3d at 618-19).[8]

Further, application of a deferential review to a plan administrator's initial determination is appropriate even if the decision was incomplete. *See Trustees of Electricians' Salary Deferral Plan v. Wright,* 688 F.3d 922, 926 (8th Cir. 2012) (holding that the administrator's eligibility determination was due deference even though it did not resolve other issues). If the Fund had made no determination of eligibility, that is, had not exercised the discretionary authority granted

---

[7] It is well established that "Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence." *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

[8] In *Wilkins*, the discussion of summary judgment standards was written separately, but constitutes the opinion of the court on the issues. *See Wilkins*, 150 F.3d at 610-11 ("Cole, J. announced the judgment of the court and delivered an opinion, in which Ryan and Gilman, JJ., concurred except as to Part II.F. Gilman, J. (pp. 617-620), delivered a separate opinion, in which Ryan, J. concurred, which constitutes the opinion of the court on the issue addressed in Part II.F.") The Court recognizes that *Wilkins* dealt with an action for denial of benefits under Section 1132(a)(1), while this is an action under Section 1132(a)(3). However, absent some articulable reason why the *Wilkins* standards should not be applied to this case, which was not offered by Ms. Gruel, the Court follows the direction of *Wilkins* that summary judgment is generally not appropriate in ERISA actions.

to it, the Court would apply a *de novo* standard of review. *Id*. (quoting *Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 868 (8th Cir. 2006)). However, when an eligibility determination is made prior to filing the interpleader action, that decision is appropriately given judicial deference under the arbitrary and capricious or abuse of discretion standard. *Id*. (citing *Alliant Techsystems*, 465 F.3d at 869).[9] Accordingly, the Court finds that the arbitrary and capricious standard of review applies to the Fund's determination of Ms. Gruel's eligibility for benefits based on the construction of Lawhorne's beneficiary designation.

The arbitrary and capricious standard of review is a "highly deferential" one. *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996). It is the least demanding form of judicial review of administrative action. *Davis By and Through Farmers Bank and Capital Trust Co. of Frankfort v. Kentucky Fin. Companies Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). "A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund,* 203 F.3d 926, 933 (6th Cir.2000). "Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000). Moreover, a reviewing court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.,* 385 F.3d 989, 992 (6th Cir. 2004). In conducting such a review, the Court will "interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense." *Perez,* 150 F.3d at

---

[9] "Arbitrary and capricious" and "abuse of discretion" are used interchangeably to describe the same deferential standard of review. *See Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (using both terms to describe the standard of review); *see also, Firestone Tire & Rubber Co.*, 489 U.S. at 115 (using term abuse of discretion to describe standard of review of discretionary decision of plan administrator).

556; *see also Morgan,* 385 F.3d at 992 ("In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person.").[10]

Under the arbitrary and capricious standard, the court can overturn the administrator's decision "only by finding that they abused their discretion-which is to say, that they were not just clearly incorrect but downright unreasonable." *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990). "It is only if the court is confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence that it may conclude that a decision was arbitrary and capricious." *Erickson v. Metropolitan Life Ins. Co.,* 39 F.Supp.2d 864, 870 (E.D.Mich.1999).

Because Donald Lawhorne died without a surviving spouse, the beneficiary designation determines eligibility. Lawhorne's last beneficiary designation form, completed in February of 2015, listed as the primary beneficiary "Christy Bender-Christina [sic]" with a relationship description of "Girlfriend" and a designated contingent beneficiary of "Camryn Lawhorne" with a relationship description of "Daughter". No change in beneficiary designation was made by Lawhorne prior to his death on January 10, 2018 from a sudden traumatic brain injury caused by

---

[10] Ms. Gruel did not suggest in any of her filings that a conflict exists between the Fund's dual roles. Arguably, she has, therefore, waived any argument to that effect. *See Haywood v. Colvin*, No. 2:14-cv-00092, 2016 WL 2893261, at * 3 (M.D. Tenn. May 18, 2016) (Nixon, J.) (party waives argument by not raising it to the magistrate judge) (internal citations omitted). Nevertheless, to the extent there is an arguable conflict of interest, the Court does not find it impacts the outcome. *See Peruzzi v. Summa Med. Plan,* 137 F.3d 431, 433 (6th Cir.1998) (conflict of interest does not alter the standard of review, but "should be taken into account as a factor in determining whether the ... decision was arbitrary and capricious"); *see also Evans v. UnumProvident Corp.,* 434 F.3d 866, 876 (6th Cir.2006) (even when potential for self-interested decision-making exists, court must look to see if there is evidence that conflict in any way influenced plan administrator's decision). There is no evidence in the record, or any offered by Ms. Gruel, that the actions of the Fund were influenced by its own interests. Further, this is not an instance where a plan is attempting to avoid paying benefits, which further diminishes the impact of any conflict.

a self-inflicted gunshot. According to the death certificate, at that time of his death, Lawhorne was at his then "girlfriend's residence," which was not Ms. Gruel's residence. Nor were Ms. Gruel and Lawhorne in a romantic relationship at the time of Lawhorne's death. In fact, by that time, Ms. Gruel was married to someone else.

These were all facts taken into consideration by the Fund in evaluating Ms. Gruel's claim.[11] The letter sent to Ms. Gruel on April 4, 2018 details the review of the evidence by the Fund with the bases for its determination that she is not an eligible beneficiary. *See* AR at 101-102. Fundamentally, the Fund determined that the relationship designation of a beneficiary is a substantive component of beneficiary eligibility. Contrary to the assertions of Ms. Gruel, the Fund's eligibility determination is the kind of reasoned explanation, based on the evidence, that supports a conclusion that the Fund acted neither arbitrarily nor capriciously. Further, the Court is compelled to accept the Fund's rational interpretation of its plan even in the face of Ms. Gruel's ostensibly equally rational interpretation that her relationship status as Lawhorne's girlfriend connotes no specific meaning. *Morgan,* 385 F.3d at 992.

As importantly, the Court is unable to conclude that the Fund was both clearly incorrect and downright unreasonable, which precludes a determination that the Fund abused its discretion. *Fuller,* 905 F.2d at 1058. There are, as noted by Ms. Gruel, several decisions with different fact situations in which courts have considered the extent to which a federal common law waiver or a conflicting state law can defeat an ex-spouse's claim to benefits under an ERISA plan. However, the *Kennedy v. Kennedy* case relied upon by Ms. Gruel is inapposite from this case because the ERISA plan administrator's benefit decision there was nondiscretionary and therefore reviewed

---

[11] Because the IRC affirmed the determinations of the administrative staff, the Court refers to the actions as those of the Fund.

*de novo*. 497 F.3d 426, 429 (5th Cir. 2007), affirmed 555 U.S. 285 (2009). Further, that dispute centered around the effect of a waiver of benefits.

In *Egelhoff v. Egelhoff ex rel. Breiner*, the sole issue before the Supreme Court was whether a Washington state statute providing for the disposition of an intestate decedent's interest in non-probate assets (including proceeds of life insurance policies, employee benefit plans, annuities or similar contracts, and individual retirement accounts) following dissolution or invalidation of a marriage was preempted by ERISA. 532 U.S. 141, 144 (2001). Although Ms. Gruel finds language helpful to her position in the dicta of *Egelhoff*, there is no controlling direction in the *Egelhoff* decision that a plan administrator may not reasonably construe the meaning of a person's relationship in its beneficiary designation or give effect to that statement of relationship in its determination of beneficiary eligibility.[12]

Admittedly, the universe of federal authority on the question of the meaning of an ERISA plan participant's description of a beneficiary as "girlfriend" is a small one, if that universe exists at all.[13] Although a "girlfriend" designation was also at the center of the dispute in the *Humana*

---

[12] In *Egelhoff*, the majority, in a dictum footnote, rejected the arguments of the children claiming rights in the benefits about the meaning of a relationship designation in a beneficiary form. 532 U.S. at 148 n.2. The entire discussion, though, represents a substantial disagreement among the deciding justices about the meaning of beneficiary relationship designations. *Id*. at 153-61 (Breyer and Stevens, JJ., dissenting). The Court does not find that *Egelhoff* compels any different outcome in this case, particularly given the deference owed to the Fund's construction of its own plan, a circumstance that is entirely, and significantly, different from the *Egelhoff* case in which the pension plan was not a party to the litigation. *See Matter of Estate of Egelhoff*, 968 P.2d 924, 926 (Wash. 1998) (insurance proceeds had already been distributed to decedent's ex-wife before the litigation commenced). *See also IBEW Pacific Pension Fund v. Lee*, 462 F. App'x. 546, 549 (6th Cir. 2012) (distinguishing cases in which benefits were awarded to participant's ex-wife and remanding the case for determination of the effect of the meaning of the participant's identification of spouse).

[13] At least one other court gave effect to a plan participant's designation of the relationship of the beneficiary as something more than simply descriptive. *See Faircloth v. Northwestern Nat. Life Ins. Co.*, 799 F.Supp. 815, 817 (S.D. Ohio 1992). In that case, the decedent, David Faircloth,

*Insurance Company of Kentucky v. O'Neal* case, the distinguishing fact is that plan participant's apparent attempt to undesignate his former girlfriend as beneficiary. 727 F. App'x. 151, 159 (6th Cir. 2018) Nevertheless, *O'Neal* is instructive in its demonstration that practical considerations can inform the construction of a beneficiary designation. *Id*. (circumstances of deceased participant's relationship with ex-girlfriend at the time of the reenrollment period corroborated his likely intent to remove ex-girlfriend as beneficiary). Additionally, the *IBEW Pacific Coast Pension Fund v. Lee* case plainly stands for the proposition that a beneficiary designation is reviewable when there is some dispute or issue about the correctness of the designation. 462 F. App'x at 549 (interpleader action remanded to the district court for determination of which of decedent's second wife, whom he incorrectly designated as his spouse on his pension application, or his first wife, whom he never divorced, was entitled to surviving spouse pension benefits).

---

designated the beneficiary of a life insurance policy as "Faircloth James H., Administrator." *Id*. at 816. However, James Faircloth was never David Faircloth's administrator, either at the time the beneficiary designation form was completed or following David Faircloth's death. *Id*. at 816-17. The administrator of David Faircloth's estate sued the insurance company and James Faircloth for a determination of the proper recipient of the insurance proceeds. *Id*. at 816. The court found that David Faircloth's designation of a beneficiary as "administrator" was an indication that he intended for the insurance proceeds to be administered for the benefit of his dependents. *Id*. at 817. Any doubt about the designation was therefore construed to that end, which the court found also comported with the social legislation purpose of ERISA to "aid the employee and his family with employee benefit plans." *Id*. In contrast, the Fifth Circuit reached a different outcome in similar fact situation in *Duggins v. Fluor Daniel, Inc.*, 217 F.3d 317 (5th Cir. 2000). In that case, the decedent, Fred Newsom, designated his long-time attorney, David Duggins, as beneficiary with the "Attorney and Executor" provided as relationship. *Id*. at 318. At the time of the designation, Duggins was not Newsom's executor; however, by the time Newsom died, he had executed a will naming Duggins both executor and beneficiary. *Id*. at 319. In resolution of the dispute between Duggins and Newsom's children, the Fifth Circuit determined that the beneficiary designation was of Duggins individually, not in his representative capacity as executor. *Id*. The Court offers these contrasting cases to demonstrate that the law on the meaning of the description of a person's relationship in a beneficiary designation is unsettled and far from clear. For that reason, the Fund's construction of its plan documents and determination of Ms. Gruel's beneficiary eligibility were neither patently incorrect nor wholly unreasonable.

Whether reasonable people might have a different construction of Lawhorne's identification of Ms. Gruel (née Bender) as his girlfriend is of no consequence, because the Court "cannot say that [the Fund] transgressed the boundaries of its discretion" under the plan to construe the plan's terms and make claims determinations. *Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296, 299-300 (6th Cir. 2006) (insurer's use of dictionary definition of "occupation," which is a general and flexible term, to make disability determination was reasonable and not arbitrary or capricious). Ms. Gruel does not convincingly point out any conflict between the Fund's determination of her beneficiary eligibility and the provisions of the plan. The Fund's construction of Lawhorne's designation does not render other portions of the plan inconsistent or meaningless. Section 4.6 of the plan provides that a deceased employee's beneficiary, as designated in accordance with Section 6.2 (the beneficiary designation provision), shall be eligible to receive benefits. AR at 65. Section 6.2 provides that a primary and a contingent beneficiary may be designated in the absence of a surviving spouse and further provides direction for designation on a beneficiary form and for changing or revoking a beneficiary designation. AR at 82. But Section 6.2 is otherwise silent on the processes for designating non-spouse beneficiaries and the meaning to be given to relationship designations. In short, the Court cannot conclude that it is inconsistent with the plan's terms for the Fund to give effect to Lawhorne's designation of Ms. Gruel (née Bender) as his girlfriend. Nor can the Court conclude that the Fund acted incorrectly or wholly unreasonably in determining that the intended meaning of "girlfriend" was no longer consistent with the relationship status at the time of Lawhorne's death and therefore no longer effective.

Under these facts, and applying the highly deferential standard of review, the Court cannot say that the Fund's determination that Ms. Gruel is not an eligible beneficiary was arbitrary and capricious. The Fund's determination is sufficiently grounded in reason and evidence to satisfy the

"least demanding form of judicial review." *Davis,* 887 F.2d at 693. For these reasons, the Fund's decision must be affirmed. The motions of the Fund and of Ms. Lawhorne for judgment on the record are therefore appropriately granted.[14]

### b. Motion of Christiana Gruel for judgment on the pleadings

For the reasons stated above, the Court finds that Ms. Gruel's motion for judgment on the pleadings is not well taken and must therefore be denied.

### IV. Conclusion

For the reasons set out above, the undersigned respectfully RECOMMENDS that:

(1) the motion for judgment on the pleadings of Christiana Gruel (Docket No. 15) be DENIED;

(2) the motion of Southern Electrical Retirement Fund (the "Fund") for judgment on the record (Docket No. 18) be GRANTED;

---

[14] At least one other federal court in a factually similar situation determined that the beneficiary designation was ambiguous and therefore looked to the plan documents for a default beneficiary. *See Investment Plan Comm. of the Investment Plan for Employees of Puget Sound Energy, Inc. v. Estate of Richard Yeakley*, No. CO5-1479RSL, 2006 WL 2254519 (D. Wash. Aug. 7, 2006). In that case, the beneficiary designation at issue identified the beneficiary as "the Yeakleys" at "RR 5 Box 243T Orono, ME 04473". *Id.* at *1. The Estate, through its executor Ralph Yeakley, argued that the decedent intended to benefit all his immediate family members, including all 23 natural, adopted, or sponsored children. *Id.* The court found, however, that the words used to designate the beneficiaries could be interpreted in any number of ways, and because all alternative readings could not be excluded, the language was ambiguous. *Id.* Upon a finding of ambiguity in the beneficiary designation form, the court looked to the plan documents to determine whether a default beneficiary was provided. *Id.* at *2. The plan in the *Yeakley* case does not appear to have made any determination of eligibility, which distinguishes that case from this one. Nevertheless, the Court notes that Ms. Gruel's argument that there is no practical way to determine Lawhorne's intent at this point results at best in an ambiguity in Lawhorne's designation of her as a beneficiary. Resolution of the question of the proper beneficiary must then be settled according to the plan documents, which default first to any contingent beneficiary. *See* Section 6.2 (AR at 82). Here, Camryn Lawhorne would be entitled to the benefits as the designated contingent beneficiary.

(3) the motion of Camryn Elizabeth Lawhorne for judgment on the administrative record and/or on the pleadings (Docket No. 24) be GRANTED; and,

(4) judgment be entered declaring the pre-retirement death benefits of decedent Donald Lawhorne, Jr. payable to Camryn Elizabeth Lawhorne and directing that the Fund make payment to Ms. Lawhorne.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). A failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Judge's regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days of service of such objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

          Respectfully submitted,

          _____
          BARBARA D. HOLMES
          United States Magistrate Judge